UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KELLIE NICHOLS,

        Plaintiff,                                  Hon. Ellen S. Carmody

v.

                                                  Case No. 1:11-cv-1240

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/


**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act.  On February 7, 2012, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment.  (Dkt. #7).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.  For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

1

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 40 years old on her alleged disability onset date. (Tr. 115). She completed the eighth grade and worked previously as a siding cutter, parts assembler, order puller, cleaner, and circuit board assembler. (Tr. 18, 33-34, 167-73).

Plaintiff applied for benefits on January 14, 2008, alleging that she had been disabled since May 1, 2004, due to carpal tunnel syndrome, back "problems," and "restless" arms and legs. (Tr. 115-17, 160). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 66-114). On April 7, 2010, Plaintiff appeared before ALJ Douglas Johnson, with testimony being offered by Plaintiff and vocational expert, Susan Rowe. (Tr. 28-65). In a written decision dated June 14, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 10-20). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2006. (Tr. 13); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

X-rays of Plaintiff's lumbar spine, taken on January 2, 1998, revealed "slight disc narrowing at L4-5," but no evidence of fracture, destructive bony process, spondylolysis, or spondylolisthesis. (Tr. 268). On September 13, 1998, Plaintiff participated in a CT scan of her brain the results of which revealed "no gross evidence of an abnormal intracranial process." (Tr. 248). On November 12, 1999, Plaintiff participated in a total body bone scan the results of which revealed "no abnormal uptake." (Tr. 240).

Treatment notes dated December 1, 2005, indicate that Plaintiff "has bilateral carpal tunnel syndrome, worse on the right than on the left." (Tr. 331). On December 20, 2005, Plaintiff participated in electrodiagnostic testing the results of which revealed the following:

> Abnormal electrodiagnostic examination. Ms. Nichols has electrodiagnostic evidence of a mild median mononeuropathy at the wrist (carpal tunnel) bilaterally which is slightly worse on the right than the left side. She does not have evidence of an ulnar neuropathy on either side nor a right radial neuropathy. There is no evidence of a peripheral neuropathy nor a right cervical radiculopathy either.

(Tr. 330).

On January 13, 2006, Plaintiff underwent right carpal tunnel release surgery performed by Dr. Loren Meengs. (Tr. 328). Treatment notes dated January 26, 2006, indicate that "much of [Plaintiff's] pain is gone and her paresthesias have improved significantly." (Tr. 327).

On April 20, 2006, Plaintiff was examined by Dr. Meengs. (Tr. 326). Plaintiff reported that "she no longer has the night paresthesias and is quite a bit better but still is having some discomfort." (Tr. 326). An examination revealed that Plaintiff "has good sensation" and the doctor discerned "no signs of any significant abnormalities." (Tr. 326). On October 26, 2006, Plaintiff underwent left carpal tunnel release surgery performed by Dr. Meengs. (Tr. 312).

On April 10, 2007, Plaintiff was examined by Dr. Meengs. (Tr. 323). Plaintiff reported that "she is still having some occasional paresthesias in her hands although it certainly is a lot better than she had prior to her surgery." (Tr. 323). The doctor reported that Tinel's sign[1] was negative and that Plaintiff's sensation "seems to be quite good." (Tr. 323). Dr. Meengs concluded that Plaintiff was experiencing "some low grade irritation in her palms and probably some weakness yet in her hands" for which he recommended physical therapy and an exercise program to strengthen her fingers. (Tr. 323).

On March 7, 2008, Plaintiff was examined by Dr. Meengs. (Tr. 359). Plaintiff reported that "both of her hands feel somewhat weak." (Tr. 359). Plaintiff also acknowledged, however, that "she has not been doing any exercises and has not ever gone to physical therapy." (Tr. 359). An examination revealed that Tinel's sign was negative. (Tr. 359). The doctor reported that there "may be a very slight decreased sensation to light touch in the median nerve distribution of the right hand" and Plaintiff "has possibly a little decreased sensation in the ulnar nerve distribution on the left hand." (Tr. 359). Plaintiff was instructed to take Motrin and perform her "gripping and grasping exercises." (Tr. 359).

On March 29, 2008, Plaintiff was examined by Dr. Michael Simpson. (Tr. 360-63). Plaintiff reported she was disabled due to carpal tunnel syndrome, back pain, and restless leg syndrome. (Tr. 360). The results of a vascular examination revealed the following:

> No clubbing or cyanosis is detected. The peripheral pulses are intact.
> The feet are warm and normal color. There are no femoral bruits.
> There is no peripheral edema. Varicose veins are not seen. There is

---

[1] Tinel's test (or Tinel's sign) is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on Februaqry 26, 2013). Tinel's test is performed by tapping over the carpal tunnel area of the wrist with the palm up. A positive test causes tingling or paresthesia, and sometimes even a "shock type sensation," in the median nerve distribution. *Id.*

5

> no stasis dermatitis or ulcerations.

(Tr. 361). A musculoskeletal examination revealed the following:

> There is no joint instability, enlargement, or effusion. Grip strength remains intact. Dexterity is unimpaired. [Plaintiff] could pick up a coin, button clothing, and open a door. [She] had no difficulty getting on and off the examination table, no difficulty heel and toe walking and no difficulty squatting.

(Tr. 361). Plaintiff exhibited mildly limited ability to flex her dorsolumbar spine, but otherwise range of motion testing of her spine and upper and lower extremities, including her wrists, was normal. (Tr. 362). The results of a neurological examination revealed the following:

> Motor strength and function are normal. The patient reported decreased sensation throughout the entire palmar aspect of both hands. There is no shoulder girdle atrophy or spasm. Reflexes are intact and symmetrical. Romberg testing[2] is negative.

(Tr. 362). Plaintiff exhibited 46 pounds of grip strength in her right and left hands. (Tr. 362).

On May 21, 2008, Plaintiff participated in an MRI examination of her lumbar spine the results of which revealed the following:

> The vertebral alignment in the sagittal plane is normal. The vertebral segments appear morphologically normal and demonstrate normal marrow signal with the exception of some areas consistent with localized marrow fat or hemangioma formation. There is multilevel loss of normal disc signal compatible with disc desiccation and degeneration. No significant focal posterior disc protrusions are seen. The visualized portion of the spinal cord appears normal. There are also noted to be facet hypertrophic degenerative changes. At T11-T12, T12-L1 and L1-L2, there is early disc degenerative change. No significant central canal, neuroforaminal, or lateral recess stenosis is present. At L3-L4, there is early diffuse degenerative disc bulging with facet hypertrophic degenerative change. There is no significant foraminal or lateral recess stenosis.

---

[2] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on February 26, 2013). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

> At L4-L5, there is moderate diffuse degenerative disc bulging with facet hypertrophic degenerative change. There is no significant neuroforaminal narrowing and no lateral recess stenosis.

(Tr. 392).

On July 9, 2008, Dr. Richard Kempf completed a report regarding Plaintiff's "ability to do physical work-related activities." (Tr. 393-96). The doctor reported that Plaintiff can, without interruption, sit for 15 minutes, stand for 15 minutes, and walk for 10 minutes. (Tr. 393). The doctor reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for only one hour each. (Tr. 393). The doctor reported that Plaintiff can frequently lift five pounds, occasionally lift 10 pounds, but can never lift 20 pounds. (Tr. 393). The doctor reported that Plaintiff can occasionally stoop, squat, kneel, crouch, crawl, reach above shoulder level, and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 394). The doctor also reported that Plaintiff was able to occasionally use her hands to perform handling, fingering, and feeling activities. (Tr. 394).

X-rays of Plaintiff's right knee, taken on June 8, 2009, revealed "no right knee fracture or radiographically evident marked arthritic change." (Tr. 410). X-rays of Plaintiff's left knee, taken the same day, revealed "no apparent acute fracture or radiographically evident significant arthritic change." (Tr. 410).

On July 11, 2009, Dr. Kempf completed another report regarding Plaintiff's "ability to do physical work-related activities." (Tr. 415-18). The doctor reported that Plaintiff can, without interruption, sit for 15 minutes, stand for 15 minutes, and walk for 10 minutes. (Tr. 415). The doctor reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for one hour each. (Tr. 415). The doctor reported that Plaintiff can occasionally lift five pounds, but can never lift 10 pounds. (Tr. 415). The doctor reported that Plaintiff can occasionally stoop, crouch, reach above

7

shoulder level, and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 416). The doctor reported that Plaintiff can never squat, kneel, or crawl. (Tr. 416). The doctor reported that Plaintiff can occasionally use her hands to perform handling, fingering, and feeling activities. (Tr. 416).

On March 31, 2010, Dr. Kempf reported that Plaintiff "has advanced degenerative disc disease of the spine which affects both the low back and neck." (Tr. 428). The doctor concluded that Plaintiff "is at this point in time completely disabled from any and all forms of physical labor." (Tr. 428).

At the administrative hearing, Plaintiff testified that she was unable to perform work activities due to carpal tunnel syndrome and neck and back pain. (Tr. 42). Plaintiff reported that her back "hurts all the time." (Tr. 42). She reported that her back pain radiates into her lower extremities causing her legs to go numb. (Tr. 43-44). Plaintiff reported that she "can't do nothing with [her] arms" and that her "arms are pretty much useless." (Tr. 46). Plaintiff also reported that she was unable to hold a coffee cup or use silverware to feed herself. (Tr. 46-47). Plaintiff testified that she was unable to obtain adequate sleep due to restless leg syndrome. (Tr. 49). Plaintiff testified that she suffered three ruptured discs in her back and that as a result her back pain has gotten progressively worse. (Tr. 55).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) early to moderate degenerative disc disease of the lumbar spine; (2) bilateral carpal tunnel syndrome; (3) status post bilateral carpal tunnel release surgery; and (4) status post breast cancer, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-16). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour work day with normal breaks, she can stand/walk for six hours and sit for six hours; (3) she cannot engage in repetitive bending or twisting activities; (4) she can occasionally stoop, kneel, crouch, crawl, or climb stairs/ramps; (5) she cannot engage in significant climbing of stairs or ladders; (6) she cannot perform constant gripping or fingering activities; (7) she cannot engage in forceful use of her upper extremities; and (8) she cannot operate vibratory hand tools. (Tr. 16).

The ALJ concluded that Plaintiff was unable to perform any of her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Susan Rowe.

The vocational expert testified that there existed approximately 24,200 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 59-62). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

a. The ALJ Properly Discounted Plaintiff's Subjective Allegations

As noted above, Plaintiff testified at the administrative hearing that she suffered from far greater limitations than recognized by the ALJ. Specifically, Plaintiff reported that her back "hurts all the time" causing her legs to go numb. Plaintiff reported that her "arms are pretty much useless" and she "can't do nothing with" them. Plaintiff testified that she was unable to hold a coffee cup or use silverware to feed herself. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17).

Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly observed, the medical evidence does not support Plaintiff's subjective allegations of extreme pain and limitation. As the ALJ further observed, Plaintiff's concession to Dr. Meengs that she failed to perform her prescribed exercises or attend physical therapy following carpal tunnel surgery suggests that her allegations of pain and limitation are not fully credible. *See, e.g., Rainey v. Commissioner of Social Security*, 2011 WL 4529141 at *9 (W.D. Mich., Sept. 8, 2011) ("a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible"). In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

      b.      The ALJ Properly Evaluated the Medical Evidence

As noted above, Dr. Kempf twice completed reports regarding Plaintiff's physical limitations. Specifically, the doctor reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for only one hour each. Dr. Kempf also reported that Plaintiff can, without interruption, sit for only 15 minutes, stand for only 15 minutes, and walk for only 10 minutes. The doctor reported that Plaintiff can occasionally lift five pounds, but can never lift 10 pounds. Dr. Kempf later concluded that Plaintiff was "completely disabled from any and all forms of physical labor." Plaintiff argues that because Dr. Kempf was her treating physician, the ALJ was required to afford controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

14

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ discounted Dr. Kempf's opinions on the ground that such were not supported by the medical evidence. The record contains an MRI examination of Plaintiff's back, the results of which do not support Dr. Kempf's opinion. The other objective medical evidence of record also fails to support the doctor's opinion. Dr. Kempf's contemporaneous treatment notes likewise do not support the doctor's opinion that Plaintiff suffers from such extreme limitations. (Tr. 298-306, 332-56, 400-14). Finally, Dr. Kempf's opinion that Plaintiff is disabled is entitled to no weight or deference because the determination of disability is a matter left to the commissioner. *See* 20 C.F.R. § 404.1527(e)(1). In sum, the ALJ's decision to discount Dr. Kempf's opinion is supported by substantial evidence.

      c.  The ALJ Properly Considered and Evaluated the Evidence of Record

    The record contains the results of a Physical Residual Functional Capacity Assessment completed by Angela Maichele, a Disability Examiner. (Tr. 366-73). Maichele concluded that Plaintiff could perform a range of work activities consistent with the ALJ's RFC determination. (Tr. 366-73). This conclusion was approved by Dr. Shahida Mohiuddin. (Tr. 365). The ALJ afforded great weight to the results of this assessment. Plaintiff asserts that it was error for the ALJ to rely on these findings because Maichele was not an appropriate medical source. Even if Maichele is not an appropriate medical source, her conclusions were approved by a medical doctor. As the ALJ stated, "[a]lthough the physical assessment was not completed by a medical doctor, Dr. Shahida Mohiuddin reviewed the assessment and agreed that a light residual functional capacity was reasonable." (Tr. 18). The Court discerns no error in this circumstance, as the ALJ, ultimately, relied on the opinion of a medical doctor, an acceptable medical source. *See* 20 C.F.R. §§ 404.1513, 416.913.

    Finally, Plaintiff argues that the fact that the ALJ gave greater weight to certain evidence contradicting her claim of disability demonstrates that the ALJ "fail[ed] to consider the entire record." The fact that the ALJ found certain evidence more credible and, therefore, worthy of greater weight and consideration is not evidence that the ALJ failed to even consider that evidence to which he assigned lesser weight. To the contrary, a review of the ALJ's opinion reveals that he discussed the evidence of record in great detail, including the evidence which arguably supported Plaintiff's position. This argument is, therefore, rejected.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date:  March 12, 2013   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge